AJ KWIATKOWSKI, et al.,

    *Plaintiffs,*

    v.

LESLIE COOLEY DISMUKES, et al.,

    *Defendants,*

    and

PHILIP E. BERGER, et al.,

    *Intervenor-Defendants.*

Case No.
3:26-cv-00098-SCR-WCM

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR EXTENSION OF TIME AND EXPEDITED DISCOVERY

Defendants seek a four-month extension to respond to Plaintiffs' pending motions for class certification and a preliminary injunction. (D.E. 26). During this extension, and before a Rule 26(f) conference, Defendants wish to conduct expedited discovery on virtually every aspect of Plaintiffs' claims, which would include deposing the five named Plaintiffs and their expert witness. For several reasons, Defendants have not shown good cause.

First, Defendants' discovery requests are not narrowly tailored. To the contrary, six free-ranging depositions would be "extraordinarily broad" and "equal to what a party might anticipate under whole case discovery." *Clean Juice Franchising, LLC v. Charleston Juicing, LLC*, No. 3:23-CV-00894-RJC-SCR, 2024 WL 1363927, at *2 (W.D.N.C. Mar. 29, 2024). Defendants do not even acknowledge this requirement.

1

Second, Defendants will not face irreparable harm without expedited discovery. There is no risk that evidence will be lost or destroyed. Defendants already have access to a significant amount of evidence relevant to Plaintiffs' motions. Defendants are free to submit evidence in opposition. And the mere possibility that the Court would issue a temporary, prohibitory injunction is not irreparable harm, especially since the Court would retain authority to modify or dissolve any injunction or class certification order as the case proceeds. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

Defendants mainly argue that because HB805 was enacted last July, and Plaintiffs did not sue until February, *Plaintiffs* cannot show irreparable harm if the parties were to spend more time compiling a fuller record now. (D.E. 26 ¶ 6). This argument tries to flip the burden of proof for early discovery, and even then fails on its own terms.

On a motion for a preliminary injunction, when "there is a likely constitutional violation, the irreparable harm factor is satisfied." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc). That can be true even when plaintiffs wait a *year* before seeking relief. *See, e.g., Candle Factory, Inc. v. Trade Associates Group, Ltd.*, 23 Fed. App'x 134, 137–39 (4th Cir. 2001). Here, Plaintiffs are indeed experiencing a likely constitutional violation, and they acted diligently to protect their rights. Plaintiffs could not have known how HB805 would affect them until DAC reduced or cut off their medication — something that did not happen immediately upon the law's enactment, but took place over the next several months. Plaintiffs also had to go through the prison system's administrative grievance process and engage counsel, who in turn had to investigate and prepare the lawsuit.

2

Accordingly, while Plaintiffs do not oppose a reasonable extension of time for Defendants to respond to the pending motions, the requests for a four-month extension and early discovery should be denied.

## BACKGROUND

Plaintiffs are five people in the custody of the North Carolina Department of Adult Correction (DAC). Defendants are DAC Secretary Leslie Dismukes, DAC Chief Medical Officer Arthur Campbell, and state legislative intervenors.

Plaintiffs have been diagnosed with gender dysphoria, a serious medical condition that affects some transgender and other gender non-conforming individuals. Plaintiffs have been receiving treatment for this condition, including hormone therapy, while in DAC custody. Three Plaintiffs have also been candidates for gender-affirming surgery. (D.E. 21 at 6–8).

A recently enacted statute known as HB805 only allows state funds to pay for hormone therapy or surgery to treat gender dysphoria if necessary to address "complications resulting in imminent physical harm." N.C.G.S. § 143C-6-5.6(b1). Before the law's enactment, DAC did not require this for any treatment for gender dysphoria. (D.E. 21 at 6–11).

In the months after HB805 became law, four Plaintiffs underwent a new "evaluation" of their existing hormone therapy in which the medication was reduced or cut off completely. As a predictable result of this forced withdrawal, each experienced serious mental and physical pain. Only then did DAC allow them to resume taking their prescribed medication. DAC also informed two Plaintiffs that their requests for surgery had been denied because of HB805. (*Id.* at 10–12). In a declaration attached to Defendants' instant motion, Defendant Campbell acknowledges that, going forward, medication refills

3

will continue to be authorized consistent with HB805's imminent-physical-harm require-ment. (Doc. 26-1 ¶¶ 7, 8).

Plaintiffs allege that HB805's imminent-physical-harm requirement violates the Eighth Amendment by imposing a medically unjustified barrier to adequate treatment for gender dysphoria. (D.E. 1 ¶¶ 116–119); *see De'lonta v. Johnson*, 708 F.3d 520, 5525–26 (4th Cir. 2013). Plaintiffs seek to represent a class of all current and future people in DAC custody who have or will have gender dysphoria, and have been prescribed or may require hormone therapy or gender-affirming surgery to treat gender dysphoria. (D.E. 1 ¶ 18).

Plaintiffs have filed a motion for class certification on either a standard or provi-sional basis (D.E. 18), and a motion for a preliminary injunction to block enforcement of HB805 statewide (D.E. 20). In support, Plaintiffs have filed an expert declaration from Dr. Randi Ettner (D.E. 18-1) which includes her credentials and relevant medical records for each Plaintiff; a declaration from each Plaintiff (D.Es. 18-4, 18-5, 18-6, 18-7, 18-8); declarations from two of Plaintiffs' attorneys (D.Es. 18-3, 18-9); and internal DAC docu-ments, obtained by Plaintiffs' counsel while investigating this matter, concerning DAC's implementation of HB805 (D.E. 18-3 at 4–26).

## LEGAL STANDARD

"Expedited discovery is not the norm." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000). A party must show good cause to justify discovery before a Rule 26(f) conference. *See Clean Juice Franchising*, 2024 WL 1363927, at *2. When reviewing such requests, this Court considers factors including "the procedural posture of the case, whether the discovery requested is narrowly tailored, whether the party seeking the information would be irreparably harmed by waiting until

4

after  . . . [a] Rule 26(f) conference, and whether the information sought would be unavailable or subject to destruction in the absence of expedited production." *Id.*

## I.     Defendants' discovery requests are not narrowly tailored.

Early discovery requests must be narrowly tailored. This Court has denied early discovery requests that looked more like whole case discovery requests, including instances where a party had moved for a preliminary injunction or class certification. *Clean Juice Franchising*, 2024 WL 1363927, at *2 (denying defendant's requests that were "extraordinarily broad" and "equal to what a party might anticipate under whole case discovery" where plaintiff had moved for preliminary injunction); *Fykes v. Hallelujah Acres, Inc.*, No. 1:23-CV-00046-MR-WCM, 2023 WL 8603020, at *2 (W.D.N.C. Dec. 12, 2023) (denying early discovery related to class certification where requests were not "not sufficiently targeted or appropriately limited").

Here, Defendants want four months to:

> 1) obtain and review the information relied upon by Dr. Ettner, including the medical records of the Plaintiffs; 2) to depose Dr. Ettner to probe the bases for her opinions and to examine whether Plaintiffs are in fact facing ongoing and imminent irreparable harm; 3) to retain experts to review the factual and expert information submitted by Plaintiffs in support of their motions and to prepare responsive declarations for the Court's consideration; and 4) to depose Plaintiffs as to both their suitability as class representatives and their purported need for injunctive relief. (D.E. 26 ¶ 4).

These topics appear to cover the entirety of Plaintiffs' case. Defendants don't argue that their request is narrowly tailored, nor do they even acknowledge this factor.

Discovery of this breadth is especially unusual in the context of preliminary injunctions. These motions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v.*

5

*Camenisch*, 451 U.S. 390, 395 (1981); *see, e.g.*, *Parks v. City of Charlotte*, No. 3:17-CV-00670-GCM, 2018 WL 4643193, at *4 (W.D.N.C. Sept. 27, 2018) (applying "the relaxed standard utilized at this procedural posture" to review evidence related to motion for preliminary injunction).

Moreover, Defendants already have a great deal of information on Dr. Ettner and the bases for her opinions. Her declaration details her professional background. (D.E. 18-1 ¶¶ 4–15). She cites research supporting her opinions. (*E.g.*, *id.* ¶¶ 71, 72). She has included relevant medical records from the named Plaintiffs. (*Id.*, App. D). And many of the cases in which Dr. Ettner has provided expert testimony (*id.* ¶ 13) are publicly available, including a recent case where DAC's counsel deposed and cross-examined her on much of the same subject matter at issue here, *Zayre-Brown v. NCDPS*, No. 3:22-CV-191-MOC-DCK (W.D.N.C.). All told, there is plenty of information for Defendants and the Court to address, at this early stage of the case, whether Dr. Ettner's declaration carries "the indicia of reliability common to expert testimony." *Parks*, 2018 WL 4643193, at *4.

Defendants also have a great deal of information about the named Plaintiffs. In addition to the excerpted medical records, DAC has access to Plaintiffs' medical records in their entirety.[1] As for potential conflicts, Plaintiffs are similarly situated to other class members — all are state prisoners who have gender dysphoria and require hormone therapy — and their claims are identical to other class members'. Plaintiffs' complaint and medical records confirm this much. And Defendants do not suggest what a conflict would look like here. Defendants may seek discovery on Plaintiffs' adequacy eventually, but to

---

[1] Plaintiffs provided excerpted medical records because their full records are voluminous, consisting of thousands of pages that address many issues unrelated to gender dysphoria. Plaintiffs did not withhold records "strategically," as Defendants claim. (D.E. 26 ¶ 14).

do so now, in a free-ranging deposition, would be an unwarranted fishing expedition. *Cf. McGee v. Hayes,* 43 F. App'x 214, 217 (10th Cir. 2002).

Accordingly, the requested discovery is not narrowly tailored and should be denied. It is Defendants' responsibility, "not the court's, to frame an appropriately broad discovery request. To conclude otherwise would encourage attorneys to abdicate this responsibility in favor of phrasing their discovery requests in the broadest possible terms and placing the burden on the district court of coming up with an appropriately limited request." *Jensen v. Utah Cnty.*, No. 2:24-CV-00887-JNP-CMR, 2025 WL 42150, at *4 (D. Utah Jan. 7, 2025) (cleaned up) (denying government early discovery).

## II.    Defendants do not face a risk of irreparable harm.

Defendants must also establish a likelihood of irreparable harm without early discovery. Avoiding irreparable harm in this context usually means preventing the loss or destruction of evidence, learning critical information such as a party's identity, or avoiding unreasonable delay in the litigation. *See St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240–41 (S.D. Tex. 2011) (citing cases).

Here, Defendants do not invoke any of these reasons. They instead argue that without discovery, they cannot develop a more "fulsome record," and a preliminary injunction against HB805's imminent-physical-harm requirement would constitute irreparable harm. (D.E. 26 ¶ 11). This argument fails as well.

When a federal court enjoins a state law, that can qualify as irreparable harm when the government seeks a stay. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). But in the early discovery context, the mere *possibility* of a state law being enjoined does not automatically qualify as irreparable harm. If it did, early

7

discovery would be available virtually every time someone sought relief from a state statute. And "a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (quotation marks omitted).

Defendants also invoke the Prison Litigation Reform Act (PLRA), which requires injunctive relief in prison cases to be narrowly drawn. (D.E. 26 ¶ 11). But that statute "merely codifies existing law and does not change the standards for determining whether to grant an injunction." *Smith v. Ark. Dep't of Corr.*, 103 F.3d 637, 647 (8th Cir. 1996). Defendants cite no case where the PLRA was relevant to early discovery. And for practical purposes, a prohibitory injunction would simply restore the pre-HB805 status quo: DAC already had a policy for treating gender dysphoria that did not base treatment decisions on imminent physical harm. (*See* D.E. 21 at 6). An injunction would not impose any significant administrative burden on Defendants or harm the public interest. (*Id.* at 23).

Defendants frame their request as seeking "a fair opportunity to rebut the case being mounted by Plaintiffs." (D.E. 26 ¶ 11). Plaintiffs have no objection to a reasonable extension for Defendants to respond to the pending motions. During this time, Defendants — represented here by nine attorneys — would have a fair opportunity to scrutinize Plaintiffs' arguments, review Plaintiffs' medical records, submit their own evidence, and explain if, in their view, Dr. Ettner's declaration lacks any "indicia of reliability." *Parks*, 2018 WL 4643193, at *4. Moreover, the Court would retain authority to modify or dissolve an injunction or class certification order as the regular discovery process plays out. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

Allowing months-long delay, however, would have serious consequences for Plaintiffs and other class members. During this time, they would continue to face a real risk of being denied necessary medical care for non-medical reasons. Dr. Campbell's declaration confirms that "refills and adjustments" for hormone therapy will remain "consisten[t] with state law." (D.E. 26-1 ¶ 7). DAC's enforcement of state law here — reducing or refusing hormone therapy based solely on the imminent-physical-harm requirement — causes patients wholly unjustified risk of short- and long-term health consequences. (D.E. 21 at 17–22). And Dr. Campbell does not dispute that Plaintiffs were denied surgery solely because of the statute, not an individualized review of a patient's needs. That is the same kind of irreparable harm this Court found in *Zayre-Brown v. NCDPS*, No. 3:22-CV-191-MOC-DCK, 2024 WL 1641795, at *3 (W.D.N.C. Apr. 16, 2024), *opinion vacated, appeal dismissed sub nom. Zayre-Brown v. NCDAC*, No. 24-6477, 2024 WL 4925046 (4th Cir. Nov. 25, 2024).[2]

Defendants also argue that any potential harm to putative class members is irrelevant here. (D.E. 26 ¶ 10). That is wrong. When issuing equitable relief, courts may consider potential harm to putative class members. *See A.A.R.P. v. Trump*, 145 S. Ct. 1034, 225 (2025) (ordering government "not to remove any member of the putative class of detainees from the United States until further order of this Court").

Defendants cite *Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20CV457, 2020 WL 4288103 (M.D.N.C. July 27, 2020), where the court allowed depositions before a hearing on a motion for a preliminary injunction. But that order was issued *after* the

---

[2] This Court's final judgment was vacated, *not* reversed on the merits, after the plaintiff was released from prison. Before that happened, the Fourth Circuit denied DAC's stay application, which suggests that DAC was not likely to succeed on the merits of its appeal. *Zayre-Brown v. NCDAC,* No. 24-6477, 2024 WL 3534690, at *1 (4th Cir. July 25, 2024).

9

defendants had filed "extensive briefs" which revealed "substantive issues of significant concern" and "disputed issues of fact" that discovery would help resolve. *Id.* at *2. The court also required that discovery be "narrowly tailored" and "limited." *Id.* at *17. And those plaintiffs had "not disputed" the defendants' irreparable harm argument. *Id.* at *4.

Here, Defendants have said nothing about what Eight Amendment or Rule 23 issues are disputed, why they are disputed, and how discovery could help the Court resolve those disputes. Moreover, unlike the discovery in *Democracy N.C.*, Defendants' requests are *broadly* tailored and apparently *un*limited.

In sum, being required to respond to non-dispositive motions without full discovery is not irreparable harm. Defendants' motion fails on this basis as well.

### III.    The timing of Plaintiffs' lawsuit does not create good cause.

Defendants argue that because HB805 became effective last July, and Plaintiffs did not sue until February, "Plaintiffs cannot demonstrate any plausible fear of imminent irreparable harm." (D.E. 26 ¶ 11). Accordingly, Defendants say "there is no need to rush a decision on preliminary injunctive relief because the status quo of each of the named Plaintiffs and any similarly situated putative class members will be maintained during the extension of time the Defendants are seeking." (*Id.* ¶ 12). The argument is meritless.

First, Defendants are trying to flip the burden of proof on their own motion. And they cite no case allowing a defendant early discovery based on when a plaintiff sued.

Even so, when a plaintiff establishes "a likely constitutional violation, the irreparable harm factor is satisfied." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc). The Fourth Circuit, this Court, and other courts have recognized that a delay in suing does not negate such harm, especially when there is

a reason for the delay and a defendant is not prejudiced. *See, e.g., Candle Factory, Inc. v. Trade Assocs. Group, Ltd.*, 23 Fed. App'x 134, 137-39 (4th Cir. 2001) (one-year delay did not negate irreparable harm where the reasons were "partially explained" and defendant was not prejudiced); *Norris v. City of Asheville*, No. 1:23-CV-00103-MR-WCM, 2024 WL 1261206, at *7 (W.D.N.C. Mar. 25, 2024) (granting preliminary injunction where delay was due in part to plaintiffs "thoroughly investigat[ing] their claims"); *Dames v. Roberts*, No. 25CV191, 2026 WL 699627, at *9 (M.D.N.C. Mar. 12, 2026) (granting preliminary injunction and explaining that "[t]he harm caused by Defendants' likely First Amendment violation persists despite Plaintiffs' apparent delay in filing suit").

Here, Plaintiffs and other class members are indeed experiencing a likely constitutional violation: Defendants are evaluating patients' needs for potentially necessary care based entirely on HB805's imminent-physical-harm standard, which has no basis in sound medical practice and departs from DAC's own longstanding policy for gender dysphoria treatment. (*See* D.E. 21 at 15–21). This statute has already caused Plaintiffs actual harm. (*Id.* at 10–12). And Defendant Campbell's declaration makes no promise against this happening again whenever a prescription is due for renewal. (*See* D.E. 26-1 ¶ 7).

Moreover, Plaintiffs acted diligently in challenging HB805. Plaintiffs could not have known how HB805 would affect them until DAC reduced or ended their medication, which did not happen immediately. For example, AJ Kwiatkowski's hormones were not reduced until October 2025 and then fully stopped in November. (D.E. 18-1 at 64, 65). Before suing, Plaintiffs also had to go through DAC's three-step administrative grievance process[3] to ensure compliance with the PLRA, which generally requires administrative

---

[3] NCDAC, Administrative Remedy Procedures, Ch. G, §.0300, https://public.powerdms.com/NCDAC/tree/documents/2145373.

exhaustion before suing in federal court. 42 U.S.C. § 1997e(a). On top of that, Plaintiffs had to secure counsel. Unlike Defendants, Plaintiffs are prisoners — not high-ranking government officials who have ready access to the Department of Justice and a private law firm. And once engaged, Plaintiffs' counsel had to investigate their claims and prepare the case. (*See* D.E. 18-3 ¶ 7).

Defendants cite *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75 (4th Cir. 1989), which affirmed denial of a preliminary injunction where the plaintiffs had waited nine months to seek relief. But those plaintiffs failed to show a likelihood of success on the merits, *id.* at 79, and offered no explanation for the delay.

In sum, Plaintiffs are not asking the Court to "rush" anything and would not oppose a reasonable extension of time for Defendants. But a months-long delay for Defendants to conduct whole case discovery — during which Plaintiffs and other class members will continue to experience a likely constitutional violation — is not warranted. The timing of the complaint and motion for preliminary relief does not change that.

## CONCLUSION

Defendants' motion should be denied. If the Court grants any aspect of the motion, Plaintiffs respectfully submit that (1) any depositions should occur as soon as practicable — four months would be excessive, especially since Defendants are represented by nine attorneys; (2) Plaintiffs should also be permitted early discovery; (3) the Court should enter a protective order to safeguard class members' sensitive medical information; and (4) resolution of the pending motions should occur as soon as practicable.

Respectfully submitted this 6th day of April, 2026.

/s/Daniel K. Siegel
Daniel K. Siegel
N.C. State Bar # 46397
Jaclyn A. Maffetore
N.C. State Bar #50849
Ivy A. Johnson
N.C. State Bar # 52228
P.O. Box 28004
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
Raleigh, NC 27611
T: (919) 592-4630
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
ijohnson@acluofnc.org


Elizabeth G. Simpson
N.C. State Bar # 41596
EMANCIPATE NC
P.O. Box 309
Durham, NC 27702
elizabeth@emancipatenc.org
919-682-1149

13

## CERTIFICATE OF SERVICE

I certify that on April 6, 2026, I filed the foregoing with the Clerk of Court using

the CM/ECF system, which will effect service on all counsel of record.

Respectfully submitted this 6th day of April, 2026.

/s/Daniel K. Siegel
Daniel K. Siegel

*Counsel for Plaintiff*

14

## <u>CERTIFICATE OF AI COMPLIANCE</u>

Pursuant to the Court's standing order on the use of artificial intelligence, Docket No. 3:24-mc-104, I hereby certify that no artificial intelligence was employed in the research for the preparation of the foregoing document except for such artificial intelligence embedded in Westlaw. I further certify that every statement and citation to authority in the foregoing document has been checked by an attorney in this case or a paralegal working at their direction as to the accuracy of the proposition for which it is offered and the citation to authority provided.

Respectfully submitted this the 6th day of April, 2026.

/s/Daniel K. Siegel
Daniel K. Siegel

*Counsel for Plaintiff*

15