# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## FILE NO. 3:26-cv-00098-SCR-WCM

AJ KWIATKOWSKI, et al.,
>                     Plaintiff,

>           v.

LESLIE COOLEY DISMUKES, *et al.*,
>                     Defendants,
>           and

PHILIP E. BERGER, et al.,

>                     Defendant-
>                     Intervenors.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

NOW COME, Defendants Lesile Dismukes and Arthur Campbell (hereinafter "Defendants"), by and through undersigned counsel, to file this Memorandum in Support of their Motion to Dismiss.

## I.    NATURE OF CASE

On February 6, 2026, Plaintiffs filed their Complaint. D.E. 1. Plaintiffs are incarcerated and convicted offenders held in the custody of the North Carolina Department of Adult Correction (hereinafter "NCDAC"). *Id.* Defendants are NCDAC officials. Plaintiffs allege in their Complaint that their rights have been or will be violated by the enactment and implementation of 2025 NC Sess. Laws 84 § 3(b1), which prohibits the use of state funds for gender transition procedures or cross-sex hormones on offenders unless needed to address medical complications resulting in imminent physical harm. *Id.*

1

On March 6, 2026, Philip E. Berger and Destin C. Hall (hereinafter "Defendant- Intervenors") moved to intervene in this matter, which was granted on March 19, 2026. D.E. 15; 21.

On March 18, 2026, Plaintiffs moved for injunctive relief and certification of class. D.E. 18-21. On March 26, 2026, Defendant-Intervenors filed their Answer to the Complaint. D.E. 24. On March 27, 2026, Defendants and Defendant-Intervenors moved for an extension of time to respond to Plaintiffs' Motions and for leave to obtain discovery. D.E. 26.

This Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack standing. Additionally, this matter should be dismissed because Plaintiffs have not exhausted their administrative remedies as required under the Prisoner Litigation Reform Act (hereinafter "PLRA").

## II.  STATEMENT OF FACTS

On July 29, 2025, the North Carolina Legislature passed 2025 NC Sess. Laws 84 § 3(b1) (hereinafter "HB805"). HB805 provides

> No State funds may be used, directly or indirectly, for the performance of or in furtherance of surgical gender transition procedures, or to provide puberty-blocking drugs or cross-sex hormones to any prisoner incarcerated in the State prison system or the Statewide Misdemeanor Confinement Program or otherwise in the custody of the Department of Adult Correction, or to support the administration of any governmental health plan or government-offered insurance policy offering surgical gender transition procedures, puberty-blocking drugs, or cross-sex hormones to any prisoner incarcerated in the State prison system or the Statewide Misdemeanor Confinement Program or otherwise in the custody of the Department of Adult Correction. Nothing in this subsection shall be construed to prevent State funds from being used, directly or indirectly, to address medical complications resulting in imminent physical harm, including the treatment of any infection,

injury, disease, or disorder that has been caused by or exacerbated by a previously performed or privately funded gender transition procedure.

2025 NC Sess. Laws 84 § 3(b1). The effective date of HB805 was January 1, 2026. *Id*. Plaintiffs allege that HB805 subjects them to an imminent risk of losing access to gender-affirming hormone prescriptions and surgeries. D.E. 1 at 1-2. They claim to be at imminent risk of psychological and physical harm, due to temporary discontinuations or the threat of discontinuation of their gender-affirming hormone medications. *Id*.

Notably, Plaintiffs did not file their Complaint until February 6, 2026. *Id*. The Department prescribes medications, including hormones, based on individualized patient assessments. *See* D.E. 26-1 at ¶ 4 (*Declaration of NCDAC Chief Medical Officer, Arthur Campell*). This was true before the enactment of the new law and remains true. *Id*. Before the enactment of HB805, Plaintiffs were all prescribed hormone replacement therapy. *Id*. ¶ 5. Absent clinical indication that Plaintiffs, or other incarcerated offenders on similar medications, could be removed from their prescribed medications without risking medical complications resulting in imminent physical harm, Plaintiffs will continue their current medications. *Id*. ¶ 8. Thus, Plaintiffs' hormone treatment has not changed due to the new law's enactment. *Id*.

With respect to surgical procedures, NCDAC has never approved or provided surgery as a gender affirming procedure either prior to or after the enactment of HB805. *Id*. at ¶ 9. Plaintiffs were not approved or scheduled for gender affirming

surgery prior to HB805. *Id*. Additionally, since the adoption and enactment of the HB805 statute, no Plaintiff has requested any referrals for evaluation for gender affirming surgery. *Id*. at ¶ 8. Thus, there has similarly been no change relative to future surgery which Plaintiffs may request due to the enactment of the new law. Accordingly, Plaintiffs have not exhausted administrative remedies related to procedures affected by HB805. *See* **Exhibit 1A-D** (*Declaration of Inmate Grievance Review Board Executive Director, Adrina G. Bass*).

Only three of the five Plaintiffs have exhausted remedies concerning their hormone medication. *Id*. Through administrative procedures, Plaintiffs Pumpkin Snuggs, Ashlee Inscoe and Lulubell Frazier were informed that their medications would continue as prescribed. *Id*.

## III. STANDARD OF REVIEW

In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the party asserting subject matter jurisdiction has the burden to prove its existence, regardless of the allegations in his complaint. *See, e.g., KVOS v. Associated Press,* 299 U.S. 269, 278, 57 S. Ct. 197, 201 (1936). A motion to dismiss for lack of jurisdiction may test the legal sufficiency of the allegations to support jurisdiction, or the motion may contest the facts alleged to support jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Plaintiff bears the burden of proving subject matter jurisdiction on a motion to dismiss. *Id*.; *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "Without jurisdiction the court cannot proceed at all in any cause." *Stop Reckless Econ. Instability Caused By Democrats v. FEC*, 814 F.3d 221, 228 (4th Cir. 2016)

4

(quoting, *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). When a defendant challenges the factual predicate of subject matter jurisdiction, a court "'is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## IV.   LEGAL ARGUMENTS

### A.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Plaintiffs lack standing to sue. Under Article III of the United States Constitution, this court's subject matter jurisdiction is limited to deciding "cases" and "controversies." *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Standing is "an integral component of the case or controversy requirement." *Miller*, 462 F.3d at 316 (internal quotation marks omitted). To satisfy Article III's standing requirement, a plaintiff must establish the following:

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). Plaintiffs bear the burden of establishing the elements of standing and must support each element with sufficient factual allegations. *Id.* at 458. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for

each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "A theory of standing that 'relies on a highly attenuated chain of possibilities[ ] does not satisfy the requirement that threatened injury must be certainly impending.'" *B.F. through next friend Falk*, No. 1:23-CV-00109-JRR, 2026 WL 696753, at *12 D. Md. Mar. 12, 2026) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 n.5 (2013).

"'To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *B.F. through next friend Falk v. Lopez*, No. 1:23-CV-00109-JRR, 2026 WL 696753, at *12 (D. Md. Mar. 12, 2026) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992))). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id., (citing Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Clapper*, 568 U.S. at 414).

      1.      <u>Plaintiffs Have Not and Cannot Establish an Injury-In-Fact.</u>

Here, Plaintiffs contend that they are at imminent risk of being denied gender-affirming medications and surgeries. *See* D.E. 1 at 1-2. The record does not support this claim. Their theory of harm is speculative and contradicted by their actual, ongoing treatment. *See* D.E 26-1. Plaintiffs have not and cannot establish an injury in fact for three reasons.

First, Plaintiffs have not alleged any concrete or imminent injury. Instead, Plaintiffs have merely alleged the possibility of abstract future harm. *See* D.E. 1. Allegations like those relied upon by Plaintiffs are insufficient to establish the concrete or imminent injury required for standing. Thus, reverting to the preHB805 treatment standard would not alter the status quo, change Plaintiffs' current care, or provide meaningful relief.

Second, the factual record undercuts Plaintiffs' speculative claims of current or future harm. Plaintiffs are currently receiving hormone replacement therapy, just as they were before HB805's enactment. And since Plaintiffs have not requested gender affirming surgery since the enactment of the new law, there has been no change relative to any future surgery and thus no harm. Thus, the record refutes Plaintiffs' speculative allegations of future harm and as such Plaintiffs' lack standing.

Third, any risk of imminent threat to the Plaintiffs' health is fully accounted for. As outlined in Dr. Campbell's affidavit, appropriate healthcare staff will continue to monitor the administration and efficacy of the hormone replacement therapy and will authorize refills or adjustments as indicated based on therapeutic goals and consistency with state law, which factors in the potential of medical complications resulting in imminent physical harm. D.E 26-1 at ¶¶ 7-8. Thus, consistent with the new statutory framework, Plaintiffs' medications have been maintained and will continue unless unforeseen risks arise. *Id.* Plaintiffs'

7

hypothetical and conclusory allegations are insufficient to establish the concrete injury-in-fact necessary to establish standing.

> 2. <u>Plaintiffs' Fail to Show Redressability.</u>

In addition to not establishing an injury, Plaintiffs fail to show redressability. Redressability "examines the causal connection between the alleged injury and the judicial relief requested." *Allen*, 468 U.S. at 753. Here, Plaintiffs' fail the redressability element because a return to the procedures and standards in place before HB805 would not change the status quo or change how these Plaintiffs are currently treated. As noted above, treatment under the prior law is exactly the same as the treatment they are receiving under HB805. *See* D.E 26-1. That treatment is not going to change absent unforeseen medically justified circumstances. *Id.* Because the new law has not altered their care, Plaintiffs have suffered no harm, and returning to the preHB805 framework would not modify their treatment or provide the relief they seek. Consequently, Plaintiffs have not plausibly alleged an injury or established redressability and have not met the burden of Article III standing. Therefore, the Complaint should be dismissed in its entirety for lack of subject matter jurisdiction.

**B.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.**

Plaintiffs' Complaint should be dismissed for failure to exhaust their administrative remedies prior to filing their Complaint as required by the PLRA. The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

8

confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). The PLRA's requirements of exhaustion of administrative remedies apply to all claims which arise under any federal law. *Id*. Congress enacted the PLRA's requirement to benefit prison systems and inmates by allowing the prison to address complaints before being subjected to suit, thereby reducing litigation, and improving litigation that does occur by "leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

The Supreme Court held that the PLRA required a prisoner to exhaust all administrative remedies available as a *precondition* to filing suit in federal court even if the relief sought could not be granted by the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001) (emphasis added). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *accord Nelson v. Campbell*, 541 U.S. 637, 650 (2004). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. It also is well-established that failure to exhaust is an affirmative defense to be pleaded and proven by defendant prison administrators or staff. *Jones*, 549 U.S. at 216; *see also Anderson v. XYZ Corr. Health Serv.*, 407 F.3d 674, 683 (4th Cir. 2005).

Because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings, the Supreme Court also required prisoners to complete the administrative review process in accordance with the applicable procedural rules set forth by the agency, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006). Proper exhaustion is determined by reference to institutional rules, and a prisoner is required to "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself. *Jones* at 218 (internal citations and quotation marks omitted). Thus, proper exhaustion requires Plaintiffs to comply with NCDAC's Administrative Review Policies ("ARP"). *Id.*

The Fourth Circuit has recognized that NCDAC has established, in its Administrative Remedy Procedure ("ARP"), a three-step procedure which governs submission and review of inmate grievances. *Moore v. Bennette*, 517 F.3d 717, 721 (4th Cir. 2008); *see also* Division of Prisons, ARP policy, Subchapter G, § .0300 *et seq.* (hereinafter "ARP"). As inmates, Plaintiffs were required to exhaust their administrative remedies with NCDAC in accordance with ARP. *Id.* An inmate does not exhaust their administrative remedies with NCDAC until they complete all three steps of the ARP. *Id.* "Each step of the grievance review has a time limit." *McElvine v. Beaver*, 2019 WL 3208376 at *3 (W.D.N.C. July 16, 2019) (citing ARP). "A grievance may be rejected at any level if there has been a time lapse of more than 90 days between the alleged event and submission of a grievance." *Id.*

The Fourth Circuit only recognizes one non-statutory exception for a failure to exhaust administrative remedies which is when "a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. There are no other special circumstances which warrant an exception to the rule of exhaustion. *Ross v. Blake*, 136 S. Ct. 1850 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account.").

Plaintiffs brought their claims under 42 U.S.C §1983 for violation of the Eighth Amendment, challenging the constitutional implications of HB805. D.E. 1 at 23-24. In order for their claims to proceed, Plaintiffs must have fully exhausted a grievance related to the HB805, hormone medications and gender affirming surgeries, *prior to* filing their Complaint in this matter. As shown below, Plaintiffs were aware of their exhaustion requirements and failed to comply with them.

1.      Plaintiffs Were Aware of the Exhaustion Requirement

The ARP is part of inmate orientation and is explained orally to each inmate. *See* ARP at § .0302(a)(1). From July 29, 2025 (before Complaint was filed) to February 6, 2026 (after the Complaint was filed), four of the Plaintiffs filed grievances that they exhausted through Step Three—showing that they had knowledge of the procedure in place at the time. *See* **Exhibit 2**. Only Plaintiffs, Pumpkin Suggs, Ashlee Inscoe and Lulubell Frazier exhausted a grievance related to their Complaint. *See* **Exhibit 1** at Exs. B7-8; C1; D1; D3. Plaintiff AJ Kwiatowski filed a grievance concerning hormone therapy medication and agreed with the prison's Step 2 response to the grievance. *See* **Exhibit 2** (Plaintiff AJ Kwiatowski's

11

October 23, 2025, grievance). Plaintiffs Ashlee Inscoe and Lulubell Frazier exhausted a grievance regarding gender affirming surgery but never refer to scheduled surgery or HB805 effects on a scheduled surgery. *See* **Exhibit 1** at Exs. B1-10; D1-4. Therefore, Plaintiffs cannot reasonably claim they were unaware of the ARP.

        2.      <u>Plaintiffs Did Not Exhaust Their Administrative Remedies</u>

Only Plaintiffs, Pumpkin Snuggs, Ashlee Inscoe and Lulubell Frazier appealed a grievance related to their Complaint through the final step (i.e. Step Three) between the dates of July 29, 2025 (before the Complaint was filed) and March 12, 2026 (after the Complaint was filed). Plaintiff Tremayne Izzard did not exhaust any grievance during this period, and the additional grievances exhausted by the remaining Plaintiffs are entirely unrelated to the events alleged in their Complaint. D.E. 1; *See* **Exhibit 2** at Exs. A1-D4. As provided above, the PLRA requires individual exhaustion; one inmate's grievance cannot satisfy another inmate's obligation. The three plaintiff's grievances relating to hormone medications do not satisfy the individual requirements of Plaintiffs. In short, Plaintiffs were aware of the grievance process, as shown by their exhaustion of unrelated grievances, yet they failed to exhaust their administrative remedies, either collectively or individually, before filing the lawsuit.

        3.      <u>Plaintiffs Have No Excuse for Their Failure to Exhaust</u>

Plaintiffs were not only aware of the administrative grievance procedures, but they were also available to Plaintiff. Plaintiffs have not even alleged that the

grievance process was unavailable to them. D.E. 1. Nor have they offered that there was anything preventing them from exhausting their administrative remedies prior to filing suit. *Id*. Instead, they have shown that they had the ability to file grievances at that time because they filed an exhausted grievances during the period before filing the Complaint. Nor can Plaintiffs claim that they lacked the necessary time to exhaust grievances before filing and seeking preliminary relief as they demonstrated no urgency, waiting six months from when the bill was enacted on July 29, 2025, to file this action on February 6, 2026, more than a month after the effective date. Therefore, Plaintiffs had the ability to submit grievances about the alleged constitutional violations and chose not to do so either to create the appearance of the need for emergency relief or because they lacked any actual harm to grieve. Their failure to fully exhaust administrative remedies justifies dismissal of these claims.

## V. CONCLUSION

In summary, Plaintiffs' claims against Defendants should be dismissed for lack of subject matter jurisdiction and failure to exhaust administrative remedies before filing.

Respectfully submitted this the 7th day of May 2026.

JEFF JACKSON
ATTORNEY GENERAL

/s/ James A. Barnes IV
James A. Barnes IV
Special Deputy Attorney General

N.C. State Bar No. 33356
N.C. Department of Justice
P.O. Box 629
Raleigh NC  27602-0629
Telephone:   (919) 716-6786
Facsimile:   (919) 716-6761
E-mail:  jabarnes@ncdoj.gov

/s/ Tiffany Hoyd
Tiffany Hoyd
Assistant Attorney General
N.C. State Bar No. 60931
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh, NC  27602-0629
Telephone:  (919) 716-6943
Facsimile:(919) 716-6761
E-mail:  thoyd@ncdoj.gov
*Counsel for Defendants*

## <u>CERTIFICATION OF INTELLIGENCE USED IN PREPARATION OF FILING</u>

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This, the 7th day of May 2026.

/s/ James A. Barnes IV_____
James A. Barnes IV
Special Deputy Attorney General

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on May 7, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such to all counsel of record on this matter.

Respectfully, submitted this the 7th day of May, 2026.

/s/ James A. Barnes IV_____
James A. Barnes IV
Special Deputy Attorney General